1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   INTERNATIONAL RAELIAN
     MOVEMENT (IRM), a Foreign
11   Corporation,

12            Plaintiff,                  2:08-cv-0687 FCD DAD

13        v.

14   ABDULLAH HASHEM and          ORDER AND
     HASHEM(S) FILMS,             FINDINGS AND RECOMMENDATIONS
15
              Defendants.
16   _____/

17        This matter came before the court on January 29, 2010, for further hearing on

18   plaintiff's motion for default judgment (Doc. No. 38).  Thomas D. Easton, Esq. appeared

19   telephonically for plaintiff.  No appearance was made by or on behalf of defendant Abdullah

20   Hashem or defendant Hashem(s) Films.  Oral argument was heard, and the motion was taken

21   under submission.

22        The undersigned has carefully considered plaintiff's arguments at the hearing, all

23   written materials submitted with respect to the motion, and the entire file.  For the reasons set

24   forth below, the undersigned will recommend that plaintiff's motion for default judgment be

25   denied.

26   /////

1

## PROCEDURAL BACKGROUND

Plaintiff commenced this action on April 1, 2008, by filing a complaint against five named defendants and DOES I-XX.  Defendant Joseph McGowen, proceeding pro se, responded to the complaint on June 4, 2008.  By stipulation and order filed May 14, 2009, plaintiff's claims against defendant McGowen were dismissed with prejudice.  (Doc. No. 29.)

On July 15, 2009, the assigned district judge granted plaintiff's motion for alternative service on defendants Abdullah Hashem and Hashem(s) Films.  (Doc. No. 32.) Despite being served with process in the manner approved by the court, defendants Abdullah Hashem and Hashem(s) Films failed to appear in this action.  Pursuant to plaintiff's request, the Clerk entered their defaults on October 22, 2009.  (Docs. No. 33, 34, 35.)  On October 27, 2009, plaintiff filed its motion for default judgment, noticing it for hearing before the undersigned pursuant to Local Rule 302(c)(19).  At the hearing on December 4, 2009, the undersigned requested further briefing and continued the hearing to January 29, 2010.

On January 10, 2010, plaintiff filed a voluntary dismissal without prejudice with respect to named defendants Dragonslayer and Muslims United TV, along with all DOE defendants.  (Doc. No. 41.)

Defaulted defendants Abdullah Hashem and Hashem(s) Films made no appearance at the further hearing on January 29, 2010.  Despite being served with plaintiff's request for entry of default and all papers filed in connection with plaintiff's motion for default judgment,[1] defendants did not oppose entry of default and did not file opposition to or appear at

---

[1]   See Fed. R. Civ. P. 55(b)(2) (requiring that written notice of an application for default judgment be served upon the party against whom judgment is sought only if that party "has appeared in the action"); Local Rule 135(d) (excusing parties from serving documents submitted to the court upon "parties held in default for failure to appear" unless a document asserts new or additional claims for relief against the defaulting parties).  See Wilson v. Moore & Associates, Inc., 564 F.2d 366, 368-69 (9th Cir. 1977) ("No party in default is entitled to 55(b)(2) notice unless he has 'appeared' in the action.  The appearance need not necessarily be a formal one, i.e., one involving a submission or presentation to the court.  In limited situations, informal contacts between the parties have sufficed when the party in default has thereby demonstrated a clear

either hearing on plaintiff's motion for default judgment.

**PLAINTIFF'S COMPLAINT**

I.  Plaintiff's Allegations

International Raelian Movement (IRM) is an organization based in Switzerland and organized under the laws of Switzerland.  Through national affiliates, IRM promotes nonviolent philosophical teachings worldwide through its members, web sites, seminars, and publications.  (Compl. ¶ 21.)

IRM and others were victims of an ongoing scheme of racketeering, fraud, blackmail, and extortion begun in 2005 and perpetrated by defendants Abdullah Hashem and Joseph McGowen through false front media companies Dragonslayer Productions, Hashem(s) Films, and Muslims United TV.  The purpose of defendants' scheme was to obtain plaintiff's property through fraud, disparagement, threats, extortion, blackmail, damage, and conversion and to file false allegations of criminality against plaintiff for profit based on an overall criminal structure.  In furtherance of the scheme, defendants Hashem and McGowen posed as a legitimate media partnership and fraudulently obtained film footage of plaintiff's operations and likenesses of plaintiff's members.  Defendants Hashem and McGowen then acted in accordance with a plan that included threats of violence, disparagement, allegations of criminality, and the impugning of plaintiff's reputation for the purposes of (1) obtaining an anticipated payoff from plaintiff, (2) defrauding others, and (3) profiting at the expense of plaintiff's reputation.  Plaintiff refused to pay defendants, who then converted the IRM film footage to their own use to further their illegal scheme.  As a result of defendants' illegal scheme, "plaintiff has suffered direct damages to its operations in excess of $75,000 including adverse publicity and damage to its reputation, legal fees, conversion of its property, unauthorized use of its officers and members' likenesses."  (Id. ¶¶ 1-4.)  Plaintiff also seeks replevin of film footage in defendants' possession. (Id.)

---

purpose to defend the suit.").  Out of an abundance of caution, plaintiff prudently served the defaulted defendants with all papers related to the motion for default judgment.

1    Defendants conspired with each other for over three years to defraud plaintiff and

2  obtain property belonging to plaintiff and others.  Defendants' scheme of fraud and racketeering

3  activities "consisted of an intricate pattern of individual transactions and group transactions."

4  Defendants' conduct violated criminal statutes, including mail and wire fraud, 18 U.S.C. §§ 1341

5  and 1343; interference with commerce by threats and violence, 18 U.S.C. § 1513; retaliation and

6  threats against a witness, 18 U.S.C. §§ 873 and 875; blackmail and extortion, 18 U.S.C. § 1951;

7  interstate and foreign travel in aid of racketeering enterprises, 18 U.S.C. § 1952; and money

8  laundering, 18 U.S.C. § 1957.  Defendants' activities "caused and continue to cause pervasive

9  and substantial harm to persons engaged in interstate and foreign commerce."  (Id. ¶¶ 13-20.)

10    Defendants perpetrated two illegal schemes against IRM.  (Id. ¶¶ 32-49.)  The first

11  scheme commenced in May 2005, when defendants Hashem and McGowen presented

12  themselves as aspiring film makers and proposed that they make a fair and balanced documentary

13  film about IRM and its members.  Defendant McGowen signed a release indicating that the

14  documentary film and all film footage obtained would remain the sole property of IRM and that

15  any use or exhibition of the footage would be allowed only with the prior approval of IRM.

16  Pursuant to that agreement, defendants were allowed to obtain many hours of film footage of

17  IRM functions and members.  In August 2005, instead of submitting their film footage to IRM

18  for review, defendants Hashem and McGowen demanded that, in exchange for their release of

19  the film to IRM, IRM cease all activities in the United States and Egypt, and IRM's leader step

20  down, make certain damaging admissions, issue a public apology, and return all IRM donations

21  and funds to their sources.  IRM refused defendants' demands and refused to pay any funds to

22  defendants.  Defendants then began a media campaign to promote a film about IRM, which they

23  titled "Little Claudy" and which included false and damaging allegations of criminality, sexual

24  misconduct, and financial fraud.  In late 2005, defendants Hashem and McGowen established

25  Dragonslayer Productions as the next phase of their illegal scheme, which was to market the

26  rights to the film footage in question.  In 2005 to 2006, defendant Hashem traveled to California

4

1    to seek funding for the anti-IRM project, which had turned into a for-profit movie.  Defendants

2    Hashem and McGowen sold shares in this film project, which included footage owned by IRM.

3    In September 2005, defendants Hashem and McGowen created additional web sites and

4    established the entity "Hashem(s) Films" to promote the film they called "Little Claudy," a

5    derisive reference to the founder of IRM.  Defendants' web sites contained defamatory materials

6    and incited religious hatred and ridicule towards the IRM while seeking monetary support.

7    Defendants also used many web sites and blogs as vehicles to exhibit outtakes of "Little Claudy"

8    and attacks on IRM, with unauthorized use of IRM film footage, likenesses of IRM members,

9    and copyrighted IRM materials.  In false statements to a news service and others, defendants

10   claimed that IRM had tried to pay them to prevent release of the movie and accused IRM of

11   crimes.  In November 2006, defendants exhibited the finished film "Little Claudy" at a university

12   in Indiana and received benefits from the university.  IRM spent approximately $10,000 in legal

13   fees to halt further distribution of the film by filing complaints with the university and other

14   entities.  Although plaintiff IRM was partially successful in blocking further release of the movie,

15   defendants re-edited the film footage and used some of it in an ongoing Muslim fundamentalist

16   serial called "The Djall," or Anti-Christ, where they identified IRM and its members as servants

17   of the Anti-Christ.  Throughout 2007 and up to the date of the filing of the complaint, defendants

18   continued to retaliate against IRM and its members by mass producing and distributing dozens of

19   attack videos aimed at discrediting and disparaging IRM by accusing it of being a criminal and

20   demonic organization.  (Id. ¶¶ 32-44.)

21           Defendants' second scheme involved Ramon Watkins, a disabled African

22   American radio and television minister residing in Nevada who goes by the name Prophet

23   Yahweh, and is a self-described expert in UFO's.  In 2006, defendants Hashem and McGowen

24   provided funds to Watkins to travel to Indiana for the purpose of making a film about Watkins'

25   life.  The film was intended to ridicule Watkins rather than to promote him and was part of

26   defendants' criminal scheme to defraud Watkins and IRM through a project called "Prophets of

the Gods." Defendants repeatedly told Watkins, and manufactured evidence to demonstrate, that IRM and its members were plotting against him, provoking Watkins to respond by making threats of violence, including death threats, against IRM by telephone and in film produced by defendants. Defendants publicized the threats made by Watkins and doctored film footage belonging to IRM to make it appear that IRM and Watkins were enemies and that they were threatening each other. Defendants attempted through several means to obtain investors for a film about the phony feud between Watkins and IRM. Such attempts included entering the film concept in a Fox TV reality program called "On the Lot," on which the concept appeared in the 2007 television season. When efforts to promote "Prophets of the Gods" flagged, defendant Hashem proposed to Watkins that he shoot himself with a firearm to inflict nonlethal wounds that would be reported to law enforcement as an attempted assassination by IRM. When Watkins declined, defendants began to vilify Watkins on You Tube and other venues in 2007. (Id. ¶¶ 45-49.)

Defendants also engaged in illegal schemes that did not target IRM. Those schemes included a federal civil rights complaint in which Hashem alleged false claims of employment discrimination based on his Egyptian heritage and a federal civil rights complaint in which Hashem, McGowen, and another individual accused several companies of sexual harassment and discrimination due to national origin. (Id. ¶¶ 50-51.)

In February 2008, two "whistleblowers" – an investigative internet-radio journalist who had been taken into defendants' confidence and an individual that defendant McGowen stayed with for a month in California – voluntarily provided information to IRM about the defendants' activities. Defendants and their agents then began making threats against the investigative journalist on Muslims United TV and on the telephone, placing the journalist in fear of his life because he was portrayed as an enemy of the Muslim faith who might be targeted for retaliation. (Id. ¶¶ 52-56.)

/////

Defendants effected their illegal scheme by a pattern of related acts of actual or attempted mail and wire fraud, extortion and blackmail, money laundering, and interstate travel in aid of racketeering which were agreed upon and coordinated by the defendants as part of their conspiracy to effect their scheme.  Each defendant knowingly participated in the formation of the illegal scheme with one or more other defendants and willingly participated therein by knowingly and intelligently carrying out the predicate acts.  The illegal scheme began no later than 2005 and was continuing when plaintiff's complaint was filed.  (Id. ¶¶ 57-60.)

Predicate acts of actual or attempted extortion and blackmail through threats of physical harm or economic loss in violation of 18 U.S.C. §§ 1951, 1513, 873 and 875 included (1) obtaining IRM film footage under false pretenses in order to attempt to extort financial benefits from IRM; (2) repeatedly threatening IRM and its members with allegations of criminality; (3) convincing and inducing Ramon Watkins a.k.a. Prophet Yahweh to make threats of violence against IRM; (4) soliciting Ramon Watkins a.k.a. Prophet Yahweh to self-inflict gun shot wounds on himself and blame IRM; and (5) making threats of retaliation against an investigative internet-radio journalist who provided IRM with information about defendants' anti-IRM activities.  (Id. ¶¶ 61-66.)

Predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 included (1) defendants' use of Paypal and Ebay accounts to receive funds used in the illegal scheme against IRM; (2) use of funds received through the Paypal and Ebay accounts to set up defendant false front company Muslims United TV; and (3) receipt and use of funds that had their origin with radical Muslim organizations outside the United States.  (Id. ¶¶ 67-70.)

Predicate acts of money laundering in violation of 18 U.S.C. § 1957 included the laundering of funds derived from unauthorized use of IRM's film footage and defendants' ensuing criminal acts through defendants' Paypal account and other bank accounts.  These acts were in furtherance of defendants' actual or attempted acts of unlawful extortion, mail and wire fraud, and Travel Act violations.  (Id. ¶¶ 71-73.)

1       Predicate acts of interstate and foreign travel in aid of racketeering in violation of

2   18 U.S.C. § 1952 included defendants' travel and the travel of others on their behalf from Indiana

3   to California and Nevada.  The predicate acts of interstate and foreign travel in aid of

4   racketeering were in furtherance of defendants' actual or attempted acts of unlawful extortion,

5   money laundering, mail and wire fraud, and other acts.  (Id. ¶¶ 74-76.)

6   II.  Plaintiff's Causes of Action and Prayer for Relief

7       Plaintiff alleges four RICO causes of action and two state law causes of action.

8       Count I asserts a violation of 18 U.S.C. § 1962(a).  Plaintiff claims that

9   defendants received income from a pattern of racketeering in that they received income as a

10  result of their ongoing use of IRM film footage, which was effected through mail and wire fraud,

11  money laundering, extortion, and violations of the Travel Act.  As a result of defendants' use of

12  racketeering income, plaintiff seeks damages in an amount in excess of $75,000.  (Id. ¶¶ 77-80.)

13      Count II asserts a violation of 18 U.S.C. § 1962(b).  Plaintiff claims that

14  defendants received income from a pattern of racketeering and that defendants used the income

15  to establish and maintain Muslims United TV, a criminal racketeering enterprise that continues to

16  use IRM film footage to raise funds.  As a result of defendants' acquisition, maintenance, and

17  control of Muslims United TV, plaintiff seeks damages in an amount in excess of $75,000.  (Id.

18  ¶¶ 81-84.)

19      Count III asserts a violation of 18 U.S.C. § 1962(c).  Plaintiff claims that

20  defendants conducted and participated in the conduct of Dragonslayer Productions, Muslims

21  United TV, and Hashem(s) Films through a pattern of racketeering activity.  The pattern of

22  racketeering included mail and wire fraud, money laundering, extortion, violations of the Travel

23  Act, and other illegal acts.  As a result of defendants' racketeering conduct, plaintiff seeks

24  damages in an amount in excess of $75,000.  (Id. ¶¶ 85-88.)

25      Count IV asserts a violation of 18 U.S.C. § 1962(d).  Plaintiff claims that pursuant

26  to their illegal scheme defendants conspired among themselves and with others to violate §

8

1962(a), (b), and (c).  Defendants knowingly agreed among themselves to commit or participate in at least two predicate acts in furtherance of the conspiracy.  Given the complexity and far-reaching nature of the conspiracy and the number of instances in which defendants engaged in the predicate acts, those acts could not have been committed by defendants without coordination and agreement among them to knowingly participate in the conspiracy.  As a result of defendants' racketeering conspiracy, plaintiff seeks damages in an amount in excess of $75,000.  (Id. ¶¶ 89-93.)

Count V asserts a state law claim of replevin.  Plaintiff claims that defendants wrongfully converted and exercised control and continue to exercise control over film footage that belongs to plaintiff.  IRM requests that the film footage be surrendered to the court for safekeeping and upon successful conclusion of the case that the footage be returned to plaintiff.  (Id. ¶¶ 94-96.)  Count VI asserts a violation of California Civil Code Section 3344.  Plaintiff claims that film footage in defendants' possession includes numerous recognizable instances of the use of IRM officials' and members' names, voices, signatures, photographs, or likenesses, and defendants have used these to promote illegal activity at Muslims United TV, Hashem(s) Films, and Dragonslayer Productions.  Plaintiff seeks "$750 each on behalf of its officers and members."  (Id. ¶¶ 97-101.)

By its complaint, plaintiff prays for compensatory damages in excess of $75,000, treble damages, costs and attorney fees, and such other legal or equitable relief as is deemed necessary to achieve a just result.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment.  Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven.  Dundee Cement Co. v. Howard Pipe & Concrete Products, 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also TeleVideo Sys., Inc. v.

Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).  Where damages are liquidated (i.e., capable of

ascertainment from definite figures contained in the documentary evidence or in detailed

affidavits), judgment by default may be entered without a damages hearing.  See Dundee, 722

F.2d at 1323.  Unliquidated and punitive damages, however, require "proving up" at an

evidentiary hearing or through other means.  Dundee, 722 F.2d at 1323-24; see also James v.

Frame, 6 F.3d 307, 310 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion, see

Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986), and the court is free to consider a

variety of factors in exercising that discretion, see Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th

Cir. 1986).  The court may consider such factors as:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of
> plaintiff's substantive claim, (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action, (5) the possibility of a
> dispute concerning material facts, (6) whether the default was due
> to excusable neglect, and (7) the strong policy underlying the
> Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice, ¶ 55-05[2], at 55-24 to 55-26).

## ANALYSIS

By its motion for default judgment, plaintiff seeks an award of damages in the

total amount of $665,134.00, which plaintiff characterizes as "the total replacement cost of a

corrected version of the film" that was produced by defendants.  In its supplemental brief,

plaintiff adds a request for $750 for statutory damages on one of its state law claims.

Weighing the factors outlined in Eitel, 782 F.2d at 1471-72, the undersigned finds

that the defaulting defendants have not appeared, have not opposed plaintiff's motion in any way,

and have made no showing that their failure to respond to the complaint is due to excusable

neglect.  Plaintiff's complaint is for the most part sufficient with respect to the allegations of the

defaulted defendants' liability, and there is no reason to doubt the merits of plaintiff's substantive

claims against them.  In light of the defaulted defendants' failure to appear and their lack of

1    opposition to plaintiff's claims, there is no possibility of a dispute concerning the material facts

2    underlying the action. Although public policy favors decisions on the merits, a decision on the

3    merits has been rendered impossible in this case by the defendants' defaults. These factors weigh

4    in plaintiff's favor and appear to warrant entry of default judgment. However, the undersigned

5    finds that plaintiff's complaint and motion for default judgment are deficient with respect to

6    damages.

7            First, under 18 U.S.C. § 1964(c), a plaintiff must show that the alleged RICO

8    violations proximately caused an injury to the plaintiff's business or property.[2] Canyon County

9    v. Syngenta Seeds, Inc., 519 F.3d 969, 972 (9th Cir. 2008). Not every injury to business or

10   property is compensable under RICO, and the Ninth Circuit "requires that a plaintiff asserting

11   injury to property allege 'concrete financial loss.'" Canyon County, 519 F.3d at 975 (quoting

12   Oscar v. Univ. Students Co-operative Ass'n, 965 F.2d 783, 785 (9th Cir. 1992) (en banc)). See

13   also Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303, 1310 (9th Cir. 1992) (citing Oscar,

14   965 F.2d at 785). In general, injury to a valuable intangible property interest does not constitute

15   injury to business or property for purposes of RICO. Oscar, 965 F.2d at 785; Berg v. First State

16   Ins. Co., 915 F.2d 460, 464 (9th Cir. 1990).

17           Here, plaintiff alleges "direct damages to its operations in excess of $75,000

18   including adverse publicity and damage to its reputation, legal fees, conversion of its property,

19   unauthorized use of its officers and members' likenesses" and seeks replevin of film footage in

20   defendants' possession. (Compl. ¶ 4.) In each of plaintiff's four RICO causes of action, plaintiff

21   merely alleges damages in excess of $75,000. (Id. ¶¶ 77-93.) The only concrete financial loss

22   identified in the complaint appears to be the attorneys fees expended to halt distribution of

23   defendants' film. (Id. ¶ 43.) Aside from those attorneys fees, plaintiff has not alleged a concrete

24   financial loss arising from defendants' alleged violations of RICO, and the court finds the

25   _____

26          [2] State law typically determines whether a given interest qualifies as "property." Diaz v.
     Gates, 420 F.3d 897, 899 (9th Cir. 2005).

1    pleading deficient in that regard.

2             When a court determines that a default judgment is warranted and proceeds to

3    determine the terms of the judgment, the relief granted may not be different in kind from, or

4    exceed in amount, what is demanded in the complaint.  Fed. R. Civ. P. 54(c).  In the present case,

5    plaintiff's complaint does not pray for compensatory damages in the form of "the total

6    replacement cost of a corrected version of the film" produced by defendants Hashem and

7    Hashem(s) Films.  Nor are there any allegations that plaintiff was planning to produce and

8    distribute a substitute film.  In a declaration dated October 10, 2009, Ricky Roehr, President of

9    the North American Raelian Movement, states that he obtained a finished copy of the film "Little

10   Claudy" by having an IRM member order it from England for $20, plus a mandatory FEDEX

11   shipping cost of $70, through a PayPal account belonging to defendants Hashem and Hashem(s)

12   Films.  (Pl.'s Mot. for Default J., Decl. of Ricky Roehr ¶¶ 1-3.)  Declarant states that he reviewed

13   the film, which runs approximately 50-60 minutes, and found that it contains attacks on IRM and

14   unauthorized use of IRM film footage, likenesses of IRM members, and copyrighted IRM

15   materials.  (Id. ¶ 4.)  In his declaration Mr. Roehr does not mention any plan to produce a film.

16   In a declaration dated October 9, 2009, Liz Bronstein, a producer and director of documentary

17   films, states that she was retained by IRM as an expert witness to give an opinion of the

18   "replacement value of the full length DVD, *Little Claudy*, which was filmed, edited, and

19   produced by the Defendants."  (Id., Decl. of Liz Bronstein ¶¶ 1-2.)  Declarant Bronstein reviewed

20   the film in question and noted that it is composed of seven components, of which IRM footage

21   and interviews shot at IRM seminars in Nevada comprise only one component.  (Id. ¶¶ 3-4.)

22   Declarant states her opinion of the film and presents a budget for a one-hour documentary film

23   "as if [she] were planning to make it using the same elements as Hashem to deliver a one-hour

24   documentary equal in quality to that which [she] would normally produce," arriving at a total

25   budget cost of $665,134.  (Id. ¶¶ 5-7.)  Ms. Bronstein does not indicate that she has been asked to

26   produce or that she would produce such a film.  Thus, it does not appear that the cost of a

1   "replacement" film would be a concrete financial loss for RICO purposes, if it had been

2   requested in the complaint.

3         It is well established that "pleading requirements should be enforced strictly when

4   default judgments are sought under RICO." Alan Neuman Prods., Inc. v. Albright, 862 F.2d

5   1388, 1393 (9th Cir. 1989). This is so because the monetary penalty for a defendant's failure to

6   answer is greatly enhanced by RICO's provision for treble damages.[3] Id. (citing Falk v. Allen,

7   739 F.2d 461, 464 (9th Cir. 1984)). Here, plaintiff failed to allege actual financial loss other than

8   attorney fees expended to halt distribution of defendants' film, and by its motion for default

9   judgment seeks relief completely different in kind and amount from any relief requested in the

10   complaint. As for statutory damages, plaintiff did not request such damages in its initial motion

11   for default judgment. The belated request for $750 in statutory damages in plaintiff's

12   supplemental brief is not supported by any discussion of California Civil Code Section 3344.

13                               **CONCLUSION**

14         "Clearly, the decision to enter a default judgment is discretionary." Alan Neuman

15   Prods., Inc., 862 F.2d at 1392 (citing Hawaii Carpenters' Trust Funds v. Stone, 794 F.2d 508,

16   511-12 (9th Cir. 1986); Eitel, 782 F.2d at 1471; Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.

17   1980)). For the reasons set forth above, the undersigned will recommend that plaintiff's motion

18   for default judgment be denied.

19         In light of the notice of unavailability filed by plaintiff's attorney of record on July

20   12, 2010, the undersigned will direct the Clerk of the Court to serve a courtesy copy of this order

21   on plaintiff's corporate counsel.

22         Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall serve a

23   courtesy copy of this order by mail on Jonathan H. Levy, Esq. at the address provided in the

24

25      [3] "Any person injured in his business or property by reason of a violation of section 1962
of this chapter may sue therefor in any appropriate United States district court and shall recover

26   threefold the damages he sustains . . . ." 18 U.S.C. § 1964(c) (emphasis added).

1   Notice of Unavailability filed on July 12, 2010 (Doc. No. 46); and

2            IT IS RECOMMENDED that plaintiff's motion for default judgment (Doc. No.

3   38) be denied.

4            These findings and recommendations are submitted to the United States District

5   Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

6   days after service of these findings and recommendations, any party may file written objections

7   with the court and shall serve a copy of the objections on all parties.  Any reply to objections

8   shall be filed and served within seven days after the objections are served.  The parties are

9   advised that failure to file objections within the specified time may, under certain circumstances,

10  waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th

11  Cir. 1991).

12  DATED: September 1, 2010.

13

14  _____

15  DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

16  DAD:kw
    Ddad1\orders.civil\intlraelian0687.oah012910.f&r

17

18

19

20

21

22

23

24

25

26