IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

INTERNATIONAL RAELIAN MOVEMENT (IRM), a Foreign Corporation,

Plaintiff, 2:08-cv-0687 FCD DAD

v.

ABDULLAH HASHEM and HASHEM(S) FILMS,

FINDINGS AND RECOMMENDATIONS

Defendants.

_________________________________/

This matter came before the court on December 17, 2010, for hearing of plaintiff's amended second motion for default judgment (Doc. No. 53). Thomas D. Easton, Esq. appeared telephonically for plaintiff. No appearance was made by or on behalf of defaulted defendants Abdullah Hashem and Hashem(s) Films. Oral argument was heard, and the motion was taken under submission.

The undersigned has carefully considered plaintiff's arguments at the hearing, all written materials submitted with respect to the motion, and the entire file. For the reasons set forth below, the undersigned recommends that plaintiff's amended motion for default judgment be granted on plaintiff's claim for replevin.

/////

**PROCEDURAL BACKGROUND**

Plaintiff commenced this action on April 1, 2008, by filing a complaint against five named defendants.[1] (Doc. No. 1) On June 4, 2008, defendant Joseph McGowen filed a declaration that was deemed to be a pro se answer to the complaint. (Doc. No. 7.) By stipulation and order filed May 14, 2009, plaintiff's claims against defendant McGowen were dismissed with prejudice. (Doc. No. 29.)

On July 15, 2009, the assigned district judge granted plaintiff's motion for alternative service on defendants Abdullah Hashem and Hashem(s) Films. (Doc. No. 32.) Despite being served with process in the manner approved by the court, these defendants failed to appear in the action. Pursuant to plaintiff's evidence of service and request for entry of default, the Clerk entered the defaults of defendants Abdullah Hashem and Hashem(s) Films on October 22, 2009. (Docs. No. 33, 34, 35.)

On October 27, 2009, plaintiff filed a motion for default judgment noticed for hearing before the undersigned pursuant to Local Rule 302(c)(19). (Doc. No. 38.) At the hearing on December 4, 2009, plaintiff's counsel appeared telephonically. No appearance was made by or on behalf of defendants Abdullah Hashem and Hashem(s) Films. The undersigned requested further briefing and continued the hearing to January 29, 2010. (Doc. Nos. 39, 40.) Despite being served with all papers filed in connection with plaintiff's motion for default judgment,[2]

---

[1] On January 10, 2010, plaintiff voluntarily dismissed without prejudice unserved defendants Dragonslayer and Muslims United TV, as well as all DOE defendants. (Doc. No. 41.)

[2] An application for default judgment must be served upon the party against whom judgment is sought only if that party has appeared in the action. Fed. R. Civ. P. 55(b)(2). See also Local Rule 135(d) (excusing parties from serving documents on defaulted parties unless a document submitted for filing asserts new or additional claims for relief against the defaulted parties). "No party in default is entitled to 55(b)(2) notice unless he has 'appeared' in the action. The appearance need not necessarily be a formal one, i.e., one involving a submission or presentation to the court. In limited situations, informal contacts between the parties have sufficed when the party in default has thereby demonstrated a clear purpose to defend the suit." Wilson v. Moore & Assoc., 564 F.2d 366, 368-69 (9th Cir. 1977). Plaintiff prudently served the defaulted defendants with all papers related to the motion for default judgment.

defendants Abdullah Hashem and Hashem(s) Films did not file any written opposition to the motion nor did they appear at either hearing on the motion.

In findings and recommendations filed September 1, 2010, the undersigned determined that plaintiff had demonstrated entitlement to a default judgment but had not established entitlement to the relief sought. (Doc. No. 47 at.) Accordingly, the undersigned recommended that the motion be denied without prejudice to the filing of a second motion. (Id.) Those findings and recommendations were adopted in full on September 28, 2010. (Doc. No. 50.) Plaintiff filed its second motion for default judgment on November 11, 2010. (Doc. No. 51.) An amended second motion for default judgment was filed on November 16, 2010. (Doc. No. 53.)

**PLAINTIFF'S COMPLAINT**

I. Plaintiff's Allegations

International Raelian Movement (IRM) is an organization based in Switzerland and organized under the laws of Switzerland. Through national affiliates, IRM promotes nonviolent philosophical teachings worldwide through its members, web sites, seminars, and publications. (Compl. (Doc. No. 1) ¶ 21.)

IRM and others were victims of an ongoing scheme of racketeering, fraud, blackmail, and extortion begun in 2005 and perpetrated by defendants Abdullah Hashem and Joseph McGowen through false front media companies Dragonslayer Productions, Hashem(s) Films, and Muslims United TV. The purpose of defendants' scheme was to obtain plaintiff's property through fraud, disparagement, threats, extortion, blackmail, damage, and conversion and to file false allegations of criminality against plaintiff for profit, based on an overall criminal structure. In furtherance of the scheme, defendants Hashem and McGowen posed as a legitimate media partnership and fraudulently obtained film footage of plaintiff's operations and likenesses of plaintiff's members. Defendants Hashem and McGowen then acted in accordance with a plan that included threats of violence, disparagement, allegations of criminality, and the impugning of

plaintiff's reputation for the purposes of obtaining an anticipated payoff from plaintiff, defrauding others, and profiting at the expense of plaintiff's reputation. Plaintiff refused to pay defendants, who then converted the IRM film footage to their own use to further their illegal scheme. As a result of defendants' illegal scheme, plaintiff suffered damages in excess of $75,000 "including adverse publicity and damage to its reputation, legal fees, conversion of its property, [and] unauthorized use of its officers and members' likenesses." In addition to damages, plaintiff seeks replevin of the IRM film footage in defendants' possession. (Id. ¶¶ 1-4.)

Defendants conspired with each other for over three years to defraud plaintiff and obtain property belonging to plaintiff and others. Defendants' scheme of fraud and racketeering activities consisted of an intricate pattern of individual transactions and group transactions. Defendants' conduct violated criminal statutes, including mail and wire fraud, 18 U.S.C. §§ 1341 and 1343; interference with commerce by threats and violence, 18 U.S.C. § 1513; retaliation and threats against a witness, 18 U.S.C. §§ 873 and 875; blackmail and extortion, 18 U.S.C. § 1951; interstate and foreign travel in aid of racketeering enterprises, 18 U.S.C. § 1952; and money laundering, 18 U.S.C. § 1957. Defendants' activities caused pervasive and substantial harm to persons engaged in interstate and foreign commerce. (Id. ¶¶ 13-20.)

Defendants perpetrated two illegal schemes against IRM. The first scheme commenced in May 2005, when defendants Hashem and McGowen presented themselves as aspiring film makers and proposed that they make a fair and balanced documentary film about IRM and its members. Defendant McGowen signed a release indicating that the documentary film and all film footage obtained would remain the sole property of IRM and that any use or exhibition of the footage would be allowed only with the prior approval of IRM. Pursuant to that agreement, defendants were allowed to obtain many hours of film footage of IRM functions and IRM members. In August 2005, instead of submitting their film footage to IRM, defendants Hashem and McGowen demanded that, in exchange for their release of the film to IRM, IRM cease all activities in the United States and Egypt, and IRM's leader step down, make certain

damaging admissions, issue a public apology, and return all IRM donations and funds to their sources. IRM refused defendants' demands and refused to pay any funds to defendants. Defendants then began a media campaign to promote a film about IRM, which they titled "Little Claudy" and which included false and damaging allegations of criminality, sexual misconduct, and financial fraud.

In late 2005, defendants Hashem and McGowen established Dragonslayer Productions as the next phase of their illegal scheme, which was to market the rights to the film footage in question. In 2005 to 2006, defendant Hashem traveled to California to seek funding for the anti-IRM project, which had turned into a for-profit movie. Defendants Hashem and McGowen sold shares in this film project, which included footage owned by IRM. In September 2005, defendants Hashem and McGowen created additional web sites and established the entity "Hashem(s) Films" to promote the film they called "Little Claudy," a derisive reference to the founder of IRM. Defendants' web sites contained defamatory materials and incited religious hatred and ridicule towards the IRM while seeking monetary support. Defendants also used many web sites and blogs as vehicles to exhibit out takes of "Little Claudy" and attacks on IRM, with unauthorized use of IRM film footage, likenesses of IRM members, and copyrighted IRM materials. In false statements to a news service and others, defendants claimed that IRM had tried to pay them to prevent release of the movie and accused IRM of crimes. In November 2006, defendants exhibited the finished film "Little Claudy" at a university in Indiana and received benefits from that university. IRM spent approximately $10,000 in legal fees to halt further distribution of the film by filing complaints with the university and other entities. Although plaintiff IRM was partially successful in blocking further release of the movie, defendants re-edited the film footage and used some of it in an ongoing Muslim fundamentalist serial called "The Djall," or Anti-Christ, where they identified IRM and its members as servants of the Anti-Christ. Throughout 2007 and up to the date of the filing of the complaint in this action, defendants continued to retaliate against IRM and its members by mass producing and

distributing dozens of attack videos aimed at discrediting and disparaging IRM by accusing it of being a criminal and demonic organization. (Id. ¶¶ 32-44.)

Defendants' second scheme involved Ramon Watkins, a disabled African American radio and television minister residing in Nevada who goes by the name Prophet Yahweh and is a self-described expert in UFO's. In 2006, defendants Hashem and McGowen provided funds to Watkins to travel to Indiana for the purpose of making a film about Watkins' life. The film was intended to ridicule Watkins rather than to promote him and was part of defendants' criminal scheme to defraud Watkins and IRM through a project called "Prophets of the Gods." Defendants repeatedly told Watkins, and manufactured evidence to demonstrate, that IRM and its members were plotting against him, provoking Watkins to respond by making threats of violence, including death threats, against IRM by telephone and in film produced by defendants. Defendants publicized the threats made by Watkins and doctored film footage belonging to IRM to make it appear that IRM and Watkins were enemies and that they were threatening each other. Defendants attempted through several means to obtain investors for a film about this phony feud between Watkins and IRM. Such attempts included entering the film concept in a Fox TV reality program called "On the Lot," on which the concept appeared in the 2007 television season. When efforts to promote "Prophets of the Gods" flagged, defendant Hashem proposed to Watkins that he shoot himself with a firearm to inflict nonlethal wounds that would be reported to law enforcement as an attempted assassination by IRM. When Watkins declined, defendants began to vilify Watkins on You Tube and other venues in 2007. (Id. ¶¶ 45-49.)

Defendants also engaged in illegal schemes that did not target IRM. The schemes included a federal civil rights complaint in which Hashem alleged false claims of employment discrimination based on his Egyptian heritage and a federal civil rights complaint in which Hashem, McGowen, and another individual accused several companies of sexual harassment and discrimination due to national origin. (Id. ¶¶ 50-51.)

In February 2008, two "whistleblowers" – an investigative internet-radio journalist who had been taken into defendants' confidence and an individual that defendant McGowen stayed with for a month in California – voluntarily provided information to IRM about defendants' activities. Defendants and their agents then began making threats against the investigative journalist on Muslims United TV and on the telephone, placing the journalist in fear of his life because he was portrayed as an enemy of the Muslim faith who might be targeted for retaliation. (Id. ¶¶ 52-56.)

Defendants effected their illegal scheme by a pattern of related acts of actual or attempted mail and wire fraud, extortion and blackmail, money laundering, and interstate travel in aid of racketeering which were agreed upon and coordinated by the defendants as part of their conspiracy to effect their scheme. Each defendant knowingly participated in the formation of the illegal scheme with one or more other defendants and willingly participated therein by knowingly and intelligently carrying out the predicate acts. The illegal scheme began no later than 2005 and was continuing when plaintiff's complaint was filed. (Id. ¶¶ 57-60.)

Predicate acts of actual or attempted extortion and blackmail through threats of physical harm or economic loss in violation of 18 U.S.C. §§ 1951, 1513, 873 and 875 included (1) obtaining IRM film footage under false pretenses in order to attempt to extort financial benefits from IRM; (2) repeatedly threatening IRM and its members with allegations of criminality; (3) convincing and inducing Ramon Watkins a.k.a. Prophet Yahweh to make threats of violence against IRM; (4) soliciting Ramon Watkins a.k.a. Prophet Yahweh to self-inflict gun shot wounds on himself and blame IRM; and (5) making threats of retaliation against an investigative internet-radio journalist who provided IRM with information about defendants' anti-IRM activities. (Id. ¶¶ 61-66.)

Predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 included defendants' use of Paypal and Ebay accounts to receive funds used in the illegal scheme against IRM; use of funds received through the Paypal and Ebay accounts to set up defendant

false front company Muslims United TV; and receipt and use of funds that had their origin with radical Muslim organizations outside the United States. (Id. ¶¶ 67-70.)

Predicate acts of money laundering in violation of 18 U.S.C. § 1957 included the laundering of funds derived from unauthorized use of IRM's film footage and defendants' ensuing criminal acts through defendants' Paypal account and other bank accounts. These acts were in furtherance of defendants' actual or attempted acts of unlawful extortion, mail and wire fraud, and Travel Act violations. (Id. ¶¶ 71-73.)

Predicate acts of interstate and foreign travel in aid of racketeering in violation of 18 U.S.C. § 1952 included defendants' travel and the travel of others on their behalf from Indiana to California and Nevada. The predicate acts of interstate and foreign travel in aid of racketeering were in furtherance of defendants' actual or attempted acts of unlawful extortion, money laundering, mail and wire fraud, and other acts. (Id. ¶¶ 74-76.)

II. Plaintiff's Causes of Action and Prayer for Relief

Plaintiff alleges the following four RICO causes of action and two state law causes of action.

Count I asserts a violation of 18 U.S.C. § 1962(a). Plaintiff claims that defendants received income from a pattern of racketeering when they received income as a result of their ongoing use of IRM film footage, which was effected through mail and wire fraud, money laundering, extortion, and violations of the Travel Act. As a result of defendants' use of racketeering income, plaintiff seeks damages in an amount in excess of $75,000. (Id. ¶¶ 77-80.)

Count II asserts a violation of 18 U.S.C. § 1962(b). In this regard, plaintiff claims that defendants received income from a pattern of racketeering and used the income to establish and maintain Muslims United TV, a criminal racketeering enterprise that continues to use IRM film footage to raise funds. As a result of defendants' acquisition, maintenance, and control of Muslims United TV, plaintiff seeks damages in an amount in excess of $75,000. (Id. ¶¶ 81-84.)

/////

Count III asserts a violation of 18 U.S.C. § 1962(c). Therein, plaintiff claims that defendants conducted and participated in the conduct of Dragonslayer Productions, Muslims United TV, and Hashem(s) Films through a pattern of racketeering activity. The pattern of racketeering included mail and wire fraud, money laundering, extortion, violations of the Travel Act, and other illegal acts. As a result of defendants' racketeering conduct, plaintiff seeks damages in an amount in excess of $75,000. (Id. ¶¶ 85-88.)

Count IV asserts a violation of 18 U.S.C. § 1962(d). Plaintiff claims that defendants conspired among themselves and with others to violate § 1962(a), (b), and (c). Defendants knowingly agreed among themselves to commit or participate in at least two predicate acts in furtherance of the conspiracy. Given the complexity and far-reaching nature of the conspiracy and number of instances in which defendants engaged in the predicate acts, those acts could not have been committed by defendants without coordination and agreement among them to knowingly participate in the conspiracy. As a result of defendants' racketeering conspiracy, plaintiff seeks damages in an amount in excess of $75,000. (Id. ¶¶ 89-93.)

Count V alleges a state law claim of replevin. Plaintiff claims that defendants wrongfully converted and exercised control and continue to exercise control over film footage that belongs to plaintiff. IRM requests that the film footage be surrendered to the court for safekeeping and upon successful conclusion of the case that the footage be returned to plaintiff. (Id. ¶¶ 94-96.)

Count VI asserts a violation of California Civil Code § 3344. Plaintiff claims that film footage in defendants' possession includes numerous recognizable instances of the use of IRM officials' and members' names, voices, signatures, photographs, or likenesses, and defendants have used these to promote illegal activity at Muslims United TV, Hashem(s) Films, and Dragonslayer Productions. With respect to this claim, plaintiff seeks "$750 each on behalf of its officers and members." (Id. ¶¶ 97-101.)

////

Plaintiff prays for compensatory damages in excess of $75,000, treble damages, costs and attorney fees, and such other legal or equitable relief as is deemed necessary to achieve a just result.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. Dundee Cement Co. v. Howard Pipe & Concrete Products, 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). Where damages are liquidated (i.e., capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits), judgment by default may be entered without a damages hearing. See Dundee, 722 F.2d at 1323. Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion, see Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986), and the court is free to consider a variety of factors in exercising that discretion, see Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The court may consider such factors as:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice, ¶ 55-05[2], at 55-24 to 55-26).

/////

/////

**ANALYSIS**

I. Plaintiff's Arguments

In its second motion for default judgment, plaintiff argues that there is no factual dispute that plaintiff is bereft of its film footage due to the actions of defendants and that the film footage has a tangible value, albeit one that is difficult to determine. (Doc. No. 53 at 10.) With respect to its RICO claims, plaintiff suggests that it has suffered injury to its property or business in that defendants continue to control and market plaintiff's film footage. (Id.) Plaintiff concludes that its cause of action for replevin offers a reasonable remedy on default judgment under the circumstances of the case. (Id. at 11.)

Plaintiff reasons that an order for replevin would permit plaintiff to recover its film footage and make itself whole by using the film footage as it pleases, which may include production of the originally envisioned documentary film without incurring the $665,134 previously sought by plaintiff as the replacement value of the proposed film. (Id.) Plaintiff cites California law in support of an order of replevin as a proper remedy under California law. (Id.) (citing Cal. Code Civ. Proc. § 667; Grey v. Milligan, 101 Cal. App. 328 (1929); Al G. Barnes Shows Co. v. Toyo Kisen Kaisha Oriental Steamship Co., 61 Cal. App. 304 (1923)). Plaintiff therefore requests an order of replevin for possession of the identifiable film footage obtained by defendants from plaintiff. (Id. at 12.) Plaintiff offers a proposed default judgment in which the defaulted defendants are ordered to return the film footage described in plaintiff's complaint to plaintiff within 30 days, with the issue of damages reserved in the event of non-delivery by defendants. (Id. at 13.)

II. Discussion

Upon weighing the factors outlined in Eitel, 782 F.2d at 1471-72, the undersigned finds as follows: the defaulting defendants have not appeared, have not opposed plaintiff's motions in any way, and have made no showing that their failure to respond to the complaint is due to excusable neglect; plaintiff's complaint is, for the most part, sufficient with respect to the

allegations of the defaulted defendants' liability, and there is no reason to doubt the merits of plaintiff's substantive claims against the defaulted defendants; in light of the defaulted defendants' failure to appear and failure to oppose plaintiff's claims, there is no possibility of a dispute concerning the material facts underlying this action; although public policy favors decisions on the merits, such a decision has been rendered impossible by the defendants' defaults. All of these factors weigh in plaintiff's favor and warrant entry of default judgment.

When a court determines that a default judgment is warranted and proceeds to determine the terms of the judgment, the relief granted may not be different in kind from, or exceed in amount, what is demanded in the complaint. Fed. R. Civ. P. 54(c). Here, the undersigned finds that plaintiff has again failed to offer evidence of a concrete financial loss proximately caused by defendants as a result of the conduct alleged in plaintiff's four RICO causes of action. Under 18 U.S.C. § 1964(c), a plaintiff must show that alleged RICO violations proximately caused an injury to the plaintiff's business or property.[3] Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 972 (9th Cir. 2008). Not every injury to business or property is compensable under RICO, and the Ninth Circuit "requires that a plaintiff asserting injury to property allege 'concrete financial loss.'" Canyon County, 519 F.3d at 975 (quoting Oscar v. Univ. Students Co-operative Ass'n, 965 F.2d 783, 785 (9th Cir. 1992) (en banc)). See also Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303, 1310 (9th Cir. 1992) (citing Oscar, 965 F.2d at 785). In general, injury to a valuable intangible property interest does not constitute injury to business or property for purposes of RICO. Oscar, 965 F.2d at 785; Berg v. First State Ins. Co., 915 F.2d 460, 464 (9th Cir. 1990). Although plaintiff has alleged unspecified damages in excess of $75,000 with respect to each of its four RICO causes of action, no damages should be awarded absent evidence of concrete financial loss attributable to those RICO causes of action. See Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1393 (9th Cir. 1989) (holding

---

[3] State law typically determines whether a given interest qualifies as "property." Diaz v. Gates, 420 F.3d 897, 899 (9th Cir. 2005).

that "pleading requirements should be enforced strictly when default judgments are sought under RICO" because the monetary penalty for a defendant's failure to answer is greatly enhanced by RICO's provision for treble damages).

In the present case, plaintiff has also alleged two causes of action in addition to the four RICO causes of action. The sixth cause of action in plaintiff's complaint alleges violations of California Civil Code § 3344 and seeks $750 in statutory damages for defendants' use of film footage depicting names, voices, signatures, photographs, and likenesses of officers and members of IRM. However, plaintiff has not requested the award of such damages in either of its motions for default judgment. Moreover, plaintiff has not demonstrated that it has standing to seek damages on behalf of individuals who are not parties to this action and has not offered argument or evidence in support of an award of statutory damages on behalf of others. For these reasons, plaintiff is not entitled to an award of statutory damages under California Civil Code § 3344.

Plaintiff's fifth cause of action is for replevin, and this is the form of relief plaintiff has requested in its amended second motion for default judgment. The undersigned recommends that plaintiff be granted an order for replevin requiring the defaulted defendants to return the film footage described in plaintiff's complaint to plaintiff within 30 days. However, the undersigned declines to recommend that the issue of damages in the event of non-delivery by defendants be reserved as suggested by plaintiff. Plaintiff has had two opportunities and ample time to propose alternative damages and provide evidence in support of the award of such damages. (Id. at 13.) Despite such opportunities, plaintiff has failed to support a claim for damages in connection with the motion for default judgment.

**CONCLUSION**

"Clearly, the decision to enter a default judgment is discretionary." Alan Neuman Prods., Inc., 862 F.2d at 1392 (citing Hawaii Carpenters' Trust Funds v. Stone, 794 F.2d 508,

/////

511-12 (9th Cir. 1986), Eitel, 782 F.2d at 1471, and Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980)). The undersigned recommends that default judgment be entered in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's amended second motion for default judgment (Doc. No. 53) be granted; and

2. An order for replevin be entered requiring defaulted defendants Abdullah Hashem and Hashem(s) Films to return to plaintiff International Raelian Movement the film footage described in plaintiff's complaint within 30 days after default judgment is entered against these defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after service of these findings and recommendations, any party may file written objections with the court and shall serve a copy of the objections on all parties. Any reply to objections shall be filed and served within seven days after the objections are served. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 24, 2011.

Dale A. Drozd

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1\orders.civil\intlraelian0687.am.secmdj.f&r